**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-12656

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

AUGUSTO RENE REYES-GONZALEZ,
a.k.a. Zorro,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:24-cr-00030-WWB-RMN-1

_____

Before JORDAN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Augusto Reyes-Gonzalez pled guilty to, and was sentenced to 253 months' imprisonment for, conspiracy to distribute cocaine and methamphetamine, possession with intent to distribute cocaine and methamphetamine, and illegal reentry. The district court applied the "dangerous weapon enhancement" under U.S.S.G. 2D1.1(b)(1) at sentencing because Mr. Reyes-Gonzalez sold a firearm to one of his drug customers (who was working as a confidential source ("CS")). Mr. Reyes-Gonzalez now appeals the application of that enhancement.

**I**

On August 25, 2023, a CS contacted Mr. Reyes-Gonzalez and another coconspirator to purchase cocaine. The CS drove to Mr. Reyes-Gonzalez's residence, where he provided the CS with cocaine in exchange for cash. From there, the relationship between the CS and Mr. Reyes-Gonzalez continued and eventually progressed to purchases of methamphetamine. During one of their transactions, Mr. Reyes-Gonzalez told the CS:

> You want this or that I can get it. Whatever drug you want I can get it, whatever you ask for. If you want fentanyl I can get it. . . . I get whatever nasty thing you want. If you want synthetic drugs, I have them. I have synthetic heroin.

D.E. 195 ¶ 18.

At a later exchange, the CS purchased a pound of methamphetamine from Mr. Reyes-Gonzalez at another coconspirator's residence. *See id.* ¶ 22. The CS asked that coconspirator if he could sell him "fire," which referred to a firearm. *See id.* ¶ 23. The coconspirator told the CS that he did not deal with guns and could not sell him one. *See id.* But once he left the room, Mr. Reyes-Gonzalez told the CS, "You want gun? I have gun . . . I can get whatever you want. I do not have them, because I do not like them, but I can get them." *Id.*

On December 22, 2023, Mr. Reyes-Gonzalez met the CS for another drug transaction at the coconspirator's residence. *See id.* ¶ 25. On the way, they stopped to purchase a 9mm semi-automatic pistol. *See id.* Mr. Reyes-Gonzalez facilitated the purchase for the CS and was able to negotiate the price down from $600 to $400. *See id.* They then drove to the coconspirator's residence, where the CS would buy three pounds of methamphetamine. *See id.* During the drive, Mr. Reyes-Gonzalez told the CS that "it is never worth getting in a bind" with certain individuals because they "don't care to kill your ass." *Id.* ¶ 26.

Over the course of the conspiracy, Mr. Reyes-Gonzalez was responsible for the sale of 3,018.3 grams of methamphetamine (actual), 93.584 grams of cocaine, as well as the purchase of the 9mm semi-automatic pistol. *See id.* ¶ 33.

Mr. Reyes-Gonzalez pled guilty to seven counts related to his narcotics offenses and one count of illegal reentry. At his sen-

tencing hearing, he objected to the dangerous weapon enhancement under U.S.S.G. 2D1.1(b)(1). He argued that there were no discussions about the firearm being used to further the conspiracy, there was no evidence that the firearm was inside the house during the drug transaction on December 22, and that the firearm being in the CS' vehicle was pure coincidence. *See* D.E. 197 at 12.

The government responded at sentencing that there were two ways to justify the enhancement: (1) establishing that the firearm was present at the site of the charged conduct; or (2) proving that the defendant possessed a firearm during conduct associated with the offense of conviction. *See* D.E. 198 at 3. The government primarily focused on the latter in its sentencing memorandum and during the sentencing hearing. It asserted that Mr. Reyes-Gonzalez's occupation was offering connections to contraband for a price and that "selling the CS a firearm helped [him] maintain his place as a one-stop shop for contraband." *Id*. at 4. According to the government, the sale of the firearm was "part of the same course of conduct or common scheme or plan as the offense of conviction" and therefore was conduct relevant to the offense of conviction such that the dangerous weapon enhancement should be applied. *See id*.

The district court overruled Mr. Reyes-Gonzalez's objection and applied the dangerous weapon enhancement. Mr. Reyes-Gonzalez appeals.

## II

We review the district court's findings of fact under § 2D1.1 for clear error, and the application of the guidelines to those facts *de novo*. *See United States v. Gallo*, 195 F.3d 1278, 1280 (11th Cir. 1999). We will not reverse a factual finding unless we are "left with a definite and firm conviction that a mistake has been committed." *See United States v. Matchett*, 802 F.3d 1185, 1191 (11th Cir. 2015) (citation omitted). But as long as the court's determination was plausible in light of the record reviewed in its entirety, we will affirm. *See Commodity Futures Trading Comm'n v. Gibraltar Monetary Corp., Inc.*, 575 F.3d 1180, 1186 (11th Cir. 2009).

## III

Under § 2D1.1(b)(1), a district court may adjust a defendant's offense level by two levels if "a dangerous weapon (including a firearm) was possessed[.]" Both the commentary to this provision and our precedents note that the increase reflects the "danger of violence when drug traffickers possess weapons" and that the enhancement "should be applied if the weapon was present[.]" 2D1.1(b)(1) cmt. n.11(A). *See, e.g.*, *United States v. Hall*, 46 F.3d 62, 63 (11th Cir. 1995) (noting that the government need only show "by a preponderance of the evidence that the firearm was present at the site of the charged conduct" for the enhancement to apply). Our precedents also allow application of the enhancement if a firearm was possessed during conduct relevant to the offense of conviction. *See United States v. Hunter*, 172 F.3d 1307, 1309 (11th Cir. 1999). "Relevant conduct includes acts that were part of the same

course of conduct or common scheme or plan as the offense of conviction[.]" *United States v. Smith*, 127 F.3d 1388, 1390 (11th Cir. 1997) (internal quotation marks and citation omitted). Once the government meets its burden under either basis, the burden shifts to the defendant to demonstrate that any connection between the weapon and the offense was clearly improbable. *See United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006).

Mr. Reyes-Gonzalez possessed the firearm during conduct relevant to the offense of conviction. He procured the firearm on the way to another drug transaction with the CS and his coconspirator. After procuring both the firearm and the drugs, Mr. Reyes-Gonzales and the CS drove home. *See* D.E. 210 at 8.

We have also held that a defendant's sentence can be enhanced for the possession of a firearm by another person if four requirements are met: "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the time of possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." *Gallo*, 195 F.3d at 1284 (11th Cir. 1999). Because there is a "frequent and overpowering connection" between firearms and drug trafficking, *see United States v. Cruz*, 805 F.2d 1464, 1474 (11th Cir. 1986), the CS' possession of the firearm would be sufficient to establish that the firearm was possessed in furtherance of the conspiracy.

Moreover, Mr. Reyes-Gonzalez and the CS engaged in multiple drugs transactions using the car and discussed both drugs and

the use of firearms while driving. For example, during a drive to and from one of their transactions, Mr. Reyes-Gonzalez told the CS, "You want this or that I can get it. Whatever drug you want I can get it, whatever you ask for. If you want fentanyl I can get it." D.E. 195 ¶ 18. And during the drive where Mr. Reyes-Gonzalez obtained the firearm, he told the CS that "it is never worth getting in a bind" with certain individuals because they "don't care to kill your ass." *Id*. ¶ 26. Paired with the drug-related conversations, it is reasonable to infer that this suggestion of the need for protection connects the firearm possession to the drug trafficking conspiracy. *See United States v. Hansley*, 54 F.3d 709, 716 (11th Cir. 1995) (concluding that proximity of the firearm to where drug-related conversations or activities have occurred sufficiently shows that the firearm was possessed during the offense). *See also Cruz*, 805 F.2d at 1474 ("[N]umerous cases have recognized that guns are a tool of the drug trade. There is a frequent and overpowering connection between the use of firearms and narcotics traffic.").

Mr. Reyes-Gonzalez attempts to challenge the enhancement in two ways.

First, he points us to *United States v. Castro-Perez*, 749 F.3d 1209 (10th Cir. 2014). In *Castro-Perez*, the defendant sold cocaine to an undercover agent who also asked if the defendant could sell him a gun. *See id*. at 1210. Later that day, the defendant sold a pistol to the same undercover agent. *See id*. The Tenth Circuit held that, on that record, there was "no physical relation between the weapon and the drug trafficking activity." *Id*. at 1211. But unlike in *Castro-*

*Perez*, here there was physical proximity between the firearm and the drugs; the firearm was left in the vehicle during a drug transaction and Mr. Reyes-Gonzalez returned to the vehicle after the purchase. *Castro-Perez* recognized the distinction between a case where there was "no evidence of a spatial connection between the gun and drug trafficking activity" and a case (such as here) where there was physical proximity between the gun and the drug trafficking activity. *See id.* (citing *United States v. Foy*, 641 F.3d 455, 470 (10th Cir. 2011) (concluding that coconspirator's arrest during an attempt to buy cocaine and law enforcement's subsequent recovery of a firearm from his vehicle established possession by a preponderance)). As a result, *Castro-Perez* does not compel a different conclusion.

Second, in an attempt to meet his burden of establishing that the connection between the firearm and drugs was clearly improbable, Mr. Reyes-Gonzalez focuses our attention on the lack of direct evidence about what was done with the firearm after he procured it for the CS. He argues that the firearm was likely left in the car which could have been parked miles away from the site of the drug transaction, that there is no evidence that he returned to the car after the drug transaction, and that there is no direct evidence of the firearm being in the vicinity of drug trafficking activity. *See* Appellant's Br. at 25.

There is no direct evidence of what was done with the firearm following the drug transaction, but there need not be. The district court was only required to make reasonable inferences based

on the record evidence in determining if the enhancement should apply. It would be reasonable to infer that the CS would return to retrieve the firearm he just bought if he did leave it in his vehicle; that he left the site of the drug transaction in the same car that he arrived in; that the CS left that site with the drugs he just purchased; and that Mr. Reyes-Gonzalez left with his cut of the proceeds from that sale. From that, it follows that the firearms, drugs, and drug proceeds were all in the same car at the same time. We cannot say that the district court's inference that Mr. Reyes-Gonzalez possessed a firearm during conduct relevant to the offense of conviction was unreasonable based on the facts presented here.

## IV

The district court's imposition of the § 2D1.1(b)(1) enhancement is affirmed.

**AFFIRMED**.